**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SOUTHERN MARSH COLLECTION, LLC <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; ROBERT E. LIGHTHIZER, IN HIS OFFICIAL CAPACITY AS UNITED STATES TRADE REPRESENTATIVE; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; MARK A. MORGAN, IN HIS OFFICIAL CAPACITY AS ACTING COMMISSIONER OF U.S. CUSTOMS & BORDER PROTECTION; U.S. CUSTOMS & BORDER PROTECTION <br><br> Defendants. | **Court no. 20-01998** |

**COMPLAINT**

Plaintiff, SOUTHERN MARSH COLLECTION ("SMC"), by and through its attorneys, alleges and states as follows:

1. This action concerns Defendants undertaking of a trade war not authorized by the narrow parameters of U.S. statutory authority found at section 301 of the Trade Act of 1974 ("Trade Act").

2. The escalation of the trade war through the imposition of a third round of tariffs was unauthorized on products covered by the so-called "List 3." See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).

3. Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what

23

action to take, if any, within 12 months after initiation of that investigation.

4.  The Office of the United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). The investigation was initiated on August 18, 2017.

5.  The list 3 tariffs were implemented on September 21, 2018.

6.  USTR therefore failed to issue List 3 and List 4 within that one year window.

7.  "Modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) to salvage List 3 does not permit USTR to expand the imposition of tariffs to other imports from China for reasons that are unrelated to the scope of the investigation.

8.  USTR did however alter the tariffs in List 3 and List 4. These decisions to impose and then alter the tariff rates were in response to China's retaliatory duties and other issues unrelated to the original grounds for the Section 301 measures.

9.  The arbitrary manner in which Defendants implemented the List 3 and List 4 tariff action also violates the Administrative Procedure Act ("APA").

10. USTR failed to provide sufficient opportunity for comment. Interested parties were required to simultaneously submit affirmative and rebuttal comments.

11. USTR failed to consider factors that were required by statute, such as the quantified burden imposed on U.S. commerce by China's unfair policies.

12. USTR also failed to adequately respond to the over 6,000 sincere comments received.

13. Therefore, this complaint asks that the Court set aside Defendants' actions as *ultra vires* and contrary to law. Defendants should be required to refund all tariffs collected under Lists 3 and 4 as applicable to Plaintiff, including interest accrued.

**JURISDICTION**

14. Subject matter jurisdiction exists in this action under 28 U.S.C. § 1581(i)(1)(B). Said provision confers exclusive jurisdiction to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." See, 28 U.S.C. § 1581(i)(1)(B).

**PARTIES**

15. Plaintiff was and is an importer of various goods subject to section 301 tariffs on list 3 and/or list 4a.

16. Defendant United States of America imposed, assessed and collected the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

17. The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding Lists 3 and 4.

18. Defendant U.S. Customs & Border Protection ("CBP") collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under Lists 3 and 4.

**STANDING**

19. Plaintiff holds standing to sue because it was "adversely affected or aggrieved by agency action within the meaning of" the APA per 5 U.S.C. § 702.

20. Title 28 U.S.C. § 2631(i) states that "[a]ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely

affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

21. The tariffs imposed by Defendants pursuant to Lists 3 and 4A adversely affected and aggrieved Plaintiff by requiring the payment of unlawful duties.

## TIMELINESS OF THE ACTION

22. A plaintiff must commence an action "within two years after the cause of action first accrues" pursuant to 28 U.S.C. § 2636(i). Such action here takes place under 28 U.S.C. § 1581(i)(1)(B).

23. This lawsuit contests Defendants' action in imposing section tariffs in List 3 and List 4. The earliest of these, List 3, was implemented on September 21, 2018. See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).

24. Plaintiffs' claims therefore accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register. Id.* Plaintiffs have therefore timely filed this action within 2 years of that date.

## RELEVANT LAW

25. Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices for "unreasonable or discriminatory" practices. See, 19 U.S.C. § 2411(b).

26. Once an investigation shows such practices exist, the USTR may imposing appropriate tariffs on imports as a direct remedy to that unfair practice. See also, § 2411(b), (c)(1)(B).

27. USTR is required under Section 304 of the Trade Act to determine its course of action within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B),

23

(2)(B).

28.     Thereafter, Section 307 of the Trade Act allows USTR to "modify or terminate" actions already taken under Section 301, when the "burden or restriction on United States commerce" imposed by the foreign country's practice has either "increased or decreased" or when the action "is no longer appropriate." See, § 2417(a)(1)(B), (C). No such "modification" decision was ever published.

## PROCEDURAL HISTORY

### I.     USTR's Investigation

29.     On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating an investigation pursuant to Section 301(b) of the Trade Act. The investigation concerned China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. See, *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

30.     The issue was therefore stated as whether Chinese laws and actions on intellectual property, innovation, and technology may "inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

31.     On August 18, 2017, USTR formally initiated its investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." See, *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg.

23

40,213 (Aug. 24, 2017).

32. On March 22, 2018, USTR announced the results of its investigation and concluded that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018).

33. USTR based these findings on a host of factors. USTR did not however quantify the burden or restriction imposed on U.S. Commerce by the investigated practices.

34. In March 2018, USTR stated that it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *See Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018).

## II. Lists 1 & 2

35. Defendants then undertook a series of actions to remedy the harm to the U.S. economy caused by the investigated unfair practices. The U.S. government imposed section 301 tariffs on imports from China covered by the so-called Lists 1 and 2.

36. On April 6, 2018, USTR published notice of its intent to pursue tariffs the first tranche of merchandise (List 1) subject to an additional duty of 25 percent. *See, Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,*

23

*Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).

37. The products on the so-called List 1 covered "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." Id. at 14,907.

38. USTR explained that $50 billion "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."

39. On June 20, 2018, USTR finalized List 1 subject to an additional duty of 25%. See, *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).

40. USTR also announced that it intended to impose a 25% *ad valorem* duty on List 2 Chinese products, in order to "maintain the effectiveness of [the] $50 billion trade action". *Id.* at 28,712.

41. On August 16, 2018, USTR published the final List 2 of products subject to an additional duty of 25% *ad valorem* in List 2. See, *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III. List 3 and List 4

#### A. List 3

42. Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States.

43. President Trump then instructed the USTR to consider whether $100 billion of

23

additional tariffs would be appropriate under Section 301 due to China's unfair retaliation. See, THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018).

44. On June 18, 2018, President Trump acknowledging that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision, instructed USTR to consider imposing additional duties on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2.  See, THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018).

45. USTR then stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than to specifically address any the harms identified in its Section 301 investigation. See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018).

46. USTR Robert Lighthizer then stated that although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese", the proposed duties for List 3 products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses".

47. China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

48. On July 17, 2018, USTR published notice of its proposal to "modify" the action by maintaining the original $34 billion and $16 billion actions, and by taking "supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with

an annual trade value of approximately $200 billion." See, *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018).

49. In this publication, the USTR invoked Section 307(a)(1)(C) of the Trade Act.

50. USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

*51.* In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609

*52.* USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports. *See id.*

*53.* Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id.*

54. On July 10, 2018, Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018).

55. On July 10, 2018, President Trump suggested that the United States' trade imbalance with China supported the decision.

56. Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018).

23

57. Rather than asserting that the tariffs related to the Section 301 investigation, Ambassador Lighthizer stated that China "[r]egrettably . . . illegally retaliated against U.S. workers, farmers, ranchers and businesses."

*58.* On Aug. 7, 2018, USTR then proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." See, *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule).

59. USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018, as the new deadline for both *initial and rebuttal* comments from the public. 83 Fed. Reg. at 38,761.

60. That adjustment prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.

61. Eleven days after receiving thousands of final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." See, THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018).

62. In these remarks dated September 17, 2018, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff*

23

*action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

63.     On September 21, 2018, USTR announced that List 3 products would be subject to an additional tariffs.  See, 83 Fed. Reg. at 47,974.

64.     The tariffs began at 10% ad valorem tariff that was set to rise automatically to 25% on January 1, 2019. Id.

65.     USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses.

66.     As a masked legal support for its action, USTR for the first time cited to Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted).

67.     USTR concluded that the relevant burden "continues to increase, including following the one-year investigation period."

68.     USTR also concluded that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.*

69.      USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to  the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." See, Id. at 47,975.

70.     In December 2018, and again in February 2019, the Administration announced that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%.  See, *Notice of*

23

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

71. In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).

72. The May 15, 2019 notice cited to China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.

73. As a deviation from past practice, USTR did not seek public comment but rather simply announced that the increase would occur. *Id.*

74. The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint.

### B. List 4

75. On May 17, 2019, USTR announced its intent to proceed with List 4 at an additional duty of 25% *ad valorem* on products worth $300 billion. See, *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019).

76. USTR explained that its decision was motivated by China's retreat from negotiated

trade commitments, and China's further retaliatory action against U.S. commerce.

77. Nearly 3,000 comments were filed in Docket No. USTR-2019-0004, without time for meaningful review.

78. On August 1, 2019, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. As a basis, the President cited to China's failure to abide with agricultural purchases and the failure to reduce exports of fentanyl.

79. On August 20, 2019, USTR implemented List 4 in two separate tranches. *See, Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

80. List 4A was announced as a 10% *ad valorem* duty effective September 1, 2019. List 4B was announced as a 10% *ad valorem* duty effective December 15, 2019. *Id.* at 43,305.

81. USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses. USTR did however claim that its determination "takes account of the public comments and the testimony." *Id.*

82. USTR cited to Section 307(a)(1)(B) and (C) of the Trade Act as legal authority for its action. USTR claimed that it was modifying its prior action taken pursuant to Section 301 of the Trade Act but failed to identify any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation. Instead USTR pointed to "China's subsequent "defensive actions" taken to maintain those unfair acts, policies, and practices as determined in that investigation.

83. On August 30, 2019, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).

*84.* In the August 30, 2019 publication, USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822.

*85.* In the August 30, 2019 publication, USTR also cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for the action. *Id.*

86. On December 18, 2019, USTR published notice that it would suspend List 4B tariffs.

87. On February 14, 2020, when USTR halved the applicable duty rate on List 4A.

88. In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019.

89. The duties imposed on products covered by List 3 and List 4A remain in effect as of the date of this Complaint.

90. Plaintiff later imported goods subject to the tariffs and was thereby directly damaged by the tariffs.

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

91. Paragraphs 1 through 90 are incorporated by reference.

92. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." See, 28 U.S.C. § 2201(a).

93. The actions taken by Defendants in the implementation and assessment of List 3 and List 4 tariffs was not authorized by law under the Trade Act of 1974.

94. Section 301 of the Trade Act would have only authorized the 301 tariffs if USTR

23

determined that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." See, 19 U.S.C. § 2411(b). USTR failed to predicate its actions giving rise to List 3 and List 4 on any such determination.

95. The USTR was required to determine what action to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B).

96. USTR initiated the underlying Section 301 investigation on August 18, 2017 and took action against List 3 more than a year later, on September 21, 2018.

97. USTR is authorized under Section 307 of the Trade Act to "modify or terminate" a section 301(b) tariff action when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. See, 19 U.S.C. § 2417(a)(1)(B).

98. USTR was not authorized to increase the tariffs for reasons that were unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act within the context of an open-ended trade war.

99. Since the actions to impose, and then increase the section 301 tariffs were *ultra vires* and contrary to law, the Plaintiff is entitled to declaratory judgment in its favor.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

100. Paragraphs 1 through 99 are incorporated by reference

101. The Court may pursuant to the APA hold unlawful and set aside any agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of

procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

102.   In the course of implementation of List 3 and List 4a, the government committed all of those acts enumerated in A, C, D and E and therefore exceeded its authority as delegated under the Trade Act.

103.   The government has acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

104.   No legitimate statutory basis was presented to support the "increased burden" presented by China's intellectual property policies and practices as were the subject of USTR's Section 301 investigation.

105.   Defendants promulgated List 3 and List 4a in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.

* * *

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court

(1) declare that the section 301 tariffs that were assessed on products of List 3 and List 4a were unauthorized by the Trade Act and are void *in abnitio*;

(2) declare that Defendants unlawfully promulgated List 3 in violation of the APA;

(3) vacate the List 3 and List 4A rulemaking;

(4) order refunds with interest accrued, of any section 301 tariffs paid by Plaintiff under USTR section 301 List 3 or List 4A;

(5) permanently enjoin the government from applying List 3 or List 4A against Plaintiff and from collecting any additional such tariffs from Plaintiff;

(6) award Plaintiff its costs and reasonable attorney fees; and

(7) grant such other and further relief as may be just and proper.

Respectfully submitted,

 /s/ Matt Nakachi

Dated:  September 19, 2020

Junker & Nakachi, P.C.
One Market Street
Spear Tower; Suite 3600
San Francisco, CA  94105

*Counsel to Southern Marsh Collection*

## **CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on September 19, 2020, copies of Plaintiff's Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

    /s/ Matt Nakachi
        Matt Nakachi